UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No.: 2:21-cr-20746-1

v.                           Hon. Gershwin A. Drain

(D-1) RICARDO MARTINEZ,
               Defendant.

_____/

## OPINION AND ORDER REVOKING BOND AS TO DEFENDANT RICARDO MARTINEZ

Defendant Ricardo Martinez is charged with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Martinez was arrested for these crimes in the District of Arizona, where the magistrate judge granted him bond. However, the magistrate judge stayed the bond decision pending the Government's appeal to this Court. On December 8, 2025, this Court held a hearing on the Government's bond appeal, orally revoked Martinez's bond, and ordered him detained pending trial. The instant Opinion and Order further explains the Court's reasons for revoking bond.

# I.   BACKGROUND

In 2019, the Drug Enforcement Administration ("DEA") in Phoenix, Arizona began investigating a drug trafficking organization in the Phoenix area. ECF No. 43, PageID.232. Through various modes of surveillance, DEA agents discovered Defendant Ricardo Martinez's involvement in the organization. *Id.* at PageID.233. Martinez, who was living in Detroit, Michigan at the time,[1] was designated to deliver $285,000 in cash to a courier in an apparent drug transaction. *Id.* DEA Phoenix collaborated with DEA Detroit and the Michigan State Police to pursue the matter, and Martinez and his co-defendant, Dwight Rashad, were eventually apprehended while carrying $285,060 in cash. *Id.* at PageID.237. Thereafter, DEA agents obtained a search warrant for the townhouse in Detroit associated with Martinez and discovered containers containing 14 kilograms of fentanyl, along with a loaded AR-15 assault rifle, face masks, goggles, blenders, packaging materials, and Narcan. *Id.*

Martinez was arrested in the Eastern District of Michigan on November 21, 2019 for this conduct and was ordered detained at the time. However, the Government moved to dismiss the complaint against Martinez without prejudice on December 19, 2019, "to protect and pursue other ongoing investigations involving

---

[1] Martinez's true residence is not clear, for reasons explained further below. However, during this DEA investigation it appeared that Martinez was living in a townhouse in Detroit; a neighbor confirmed seeing Martinez regularly as if he lived there. ECF No. 43, PageID.237.

other members of the alleged drug trafficking conspiracy[.]" *Id.* at PageID.238. In March 2021, the Government renewed the prosecution of Martinez for these crimes, which resulted in the instant case. *Id.* Martinez was indicted on conspiracy to distribute controlled substances under 21 U.S.C. § 846 and possession of a firearm (the AR-15) in furtherance of drug trafficking under 18 U.S.C. § 924(c). ECF No. 1. Martinez faces a minimum of ten years for the conspiracy charge and an additional minimum of five years for the firearm charge, for a total minimum sentence of 15 years. ECF No. 43, PageID.238.

After obtaining this indictment against Martinez in the Eastern District of Michigan, a warrant was issued for Martinez's arrest. However, authorities were unable to locate Martinez for several years; the DEA and U.S. Marshals received intelligence that Martinez had gone to Mexico. In early 2025, DEA Phoenix seized several kilograms of fentanyl and discovered Martinez's fingerprints on some of the wrappings. *Id.* at PageID.239. DEA Phoenix then began an independent investigation of Martinez based on intelligence that he was receiving and distributing bulk quantities of fentanyl from Mexico. *Id.*

DEA Phoenix could not locate Martinez for several months thereafter. He had no current employment records and no vehicle registered to his name. *Id.* He received mail where his mother lived, and all addresses associated with him were dead ends. *Id.* Finally, on October 19, 2025, agents identified a car with a license

plate associated with Martinez driving through Stafford, Arizona. *Id.* As this vehicle passed a Stafford Police patrolman, the officer observed Martinez attempt to duck below the passenger window. *Id.* The officer stopped the vehicle and arrested Martinez on the warrant out of the Eastern District of Michigan. *Id.*

DEA Phoenix obtained a search warrant for the phones seized from Martinez at his arrest. Agents discovered text exchanges between Martinez and drug customers in which he discussed bulk prices for large quantities of cocaine, heroin, fentanyl, and methamphetamine.[2] Many of Martinez's connections had phone numbers with the 313 area code, which is the area code for Detroit, Michigan. *Id.* at PageID.240.

Notably, over the past several years, there have been multiple concerning inconsistencies in Martinez's story regarding his address, work, and personal history. When Martinez and Rashad were stopped in Detroit in 2019 with the $285,060 in drug proceeds, Martinez told the Michigan State Police trooper who pulled them over that he and Rashad were childhood friends and that he had lived in Detroit for two or four years. *Id.* at PageID.236. Rashad claimed, however, that he only knew Martinez for two years. *Id.* Martinez was unable to explain where he worked. *Id.*

---

[2] In one text, Martinez stated that he had 50 pounds of methamphetamine for sale at $750–$1000 per pound and five kilograms of cocaine at $15,000 per kilogram. ECF No. 43, PageID.240.

After his 2019 arrest, Martinez told Pretrial Services that he lived with his mother in Phoenix from 2014–2019 and lived at another address in Phoenix for the ten years before that. *Id.* at PageID.241. Martinez's sister, however, stated that he lived with his mother in Phoenix for the past ten years and made no mention of the previous address. *Id.* At this time, Martinez claimed that he moved to Michigan to work as an electrician. *Id.*

After his 2025 arrest, Martinez told Pretrial Services that he lived at an address in Surprise, Arizona for the last ten years, which conflicted with the three previous locations he had claimed he lived in during the same timeframe. *Id.* He also stated that he was employed full time by his uncle as an electrician for the past six years. *Id.* at PageID.242. When Pretrial Services contacted his uncle, however, the uncle stated that Martinez had only worked for him for three months. *Id.*

Ultimately, Martinez made his initial appearance in the instant case in federal court in Tucson, Arizona, and the court held a detention hearing on October 23, 2025. The magistrate judge ordered Martinez to be released on bond, but stayed the order pending the Government's appeal to this Court in the Eastern District of Michigan. On December 8, 2025, this Court held a hearing on the Government's appeal. At the hearing, the Court orally declared that it was revoking Martinez's bond and ordered him detained pending trial.

## II.    LAW & ANALYSIS

When a person is ordered released pending trial by a magistrate judge, the Government may request that the district court review the magistrate judge's decision. 18 U.S.C. § 3145(a)(1). The district court's review is *de novo. United States v. Williams*, 948 F. Supp. 692, 693 (E.D. Mich. 1996). Notably, "[t]he default position of the law… is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). As such, under normal circumstances, a judicial officer may order that a defendant be detained pending trial only if he determines that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

However, if a judicial officer has probable cause to believe that the defendant committed certain serious crimes, "[t]here is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person or the safety of the community[.]" *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023). As relevant here, crimes creating a rebuttable presumption of detention include those in violation of the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) with a maximum term of imprisonment of ten years or more, and a firearms offense under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 3142(e)(3). Where the Government obtains an indictment against a defendant for crimes that

6

receive a rebuttable presumption of detention upon a showing of probable cause, "it has fulfilled its burden to establish the presumption in favor of detention." *Stone*, 608 F.3d at 945.

Section 3142(e)(3)'s presumption in favor of detention imposes "only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" *Id.* (citations omitted). The burden of production is "not heavy," although it requires the defendant to come forward with "at least some evidence." *Id.* (citations omitted). Even if the defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *see also Williams*, 948 F. Supp. at 693 ("In fact, even if the defendant rebuts the presumption, the presumption is not eradicated, but rather, it remains in the case as an evidentiary finding militating against release.").

When determining whether to detain or release a defendant pending trial, the judicial officer is required to consider the following factors: (1) the nature and circumstances of the offense charged, including whether it involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g).

7

### a.  Martinez Must Be Detained Pending Trial Because He Is a Flight Risk and a Danger to the Community

As an initial matter, both counts of Martinez's indictment—violations of 21 U.S.C. § 846 and 18 U.S.C. § 924(c)—are subject to the rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3). Moreover, a grand jury has indicted Martinez for these crimes, which establishes probable cause. *Stone*, 608 F.3d at 945. As such, the presumption applies to Martinez's case.

To rebut the presumption, Martinez provided two letters: one from his nephew, Isaac Chavez, and one from his boss, Francisco Barrios. Mr. Chavez stated that he has lived with Martinez for the past six years in Martinez's mother's house and that Martinez is a trustworthy person and great role model. Mr. Barrios stated that Martinez has worked for him for three months, has been reliable and dependable, and would be welcome back on the team if he is released on bond. Martinez argued that he could be placed on a tether and released in Arizona, where he has strong familial ties, rather than Michigan.

Even if the Court were to conclude that Martinez's evidence was sufficient to meet his "burden of production," the Court would still find that the 18 U.S.C. § 3142(g) factors "militate against release." *United States v. Marion*, No. 22-cr-20427, 2022 WL 4465157, at *3 (E.D. Mich. Sept. 26, 2022). "[W]eighing the rebuttable presumption along with all the other evidence in this case leads this [C]ourt to the

conclusion that no set of conditions exists which could reasonably assure the safety of the community if the defendant is released." *Williams*, 948 F. Supp. at 697.

   *Nature and circumstances of the offense charged.* The crimes with which Martinez is charged are gravely serious. 14 kilograms of fentanyl were uncovered in the home associated with Martinez, which equates to nearly *31 pounds* of this highly dangerous narcotic. *See United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (stating that "distribution of fentanyl, an exceptionally dangerous drug" weighs heavily in favor of pretrial detention). Moreover, Martinez was caught in possession of $285,060 of suspected drug proceeds—which, based on the wire communications the DEA intercepted, appeared to be just one of several payments—demonstrating the massive scale of this drug trafficking operation. *Brooks*, 685 F. Supp. 3d at 479 ("Large sums of cash associated with drug trafficking can fuel further criminal behavior, increase the risk of violence, and undermine the safety and well-being of the community."). And given that agents discovered a loaded AR-15 in Martinez's townhome, it appears that Martinez had "a readiness to use or to engage in armed confrontations." *Id.*

   The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers[.]" *Stone*, 608 F.3d at 947 n.6. The offense conduct in this case suggests that Martinez is far beyond a "run-of-the-mill" drug

dealer; rather, he is a well-connected and significant player in an immense drug trafficking organization. This factor weighs heavily in favor of detention.

_Weight of the evidence._ "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." _Stone_, 608 F.3d at 948. There is substantial evidence here that Martinez is a danger to the community and at risk of nonappearance. As discussed, there is probable cause to believe that Martinez engaged in a serious drug trafficking crime, which he committed in 2019. Importantly, further evidence suggests that Martinez went back to the drug trade thereafter, dealing in pounds and kilos of highly addictive narcotics. _Stone_, 608 F.3d at 947 n.6 ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."); _Brooks_, 685 F. Supp. 3d at 480 (finding "weight of the evidence" in favor of detention where the defendant went back to drug trafficking even after police seized evidence from his house); _Marion_, 2022 WL 4465157, at *3 (noting that cocaine, heroin and fentanyl "are known to be both highly addictive and lethal"). Given that Martinez was coordinating these sales over the phone, it would be futile to expect Pretrial Services to be able to effectively monitor and prevent him from resuming these drug deals while on release.

Moreover, there is strong evidence that Martinez is a flight risk. He has been evasive about his residence and whereabouts on multiple occasions. It took years for law enforcement to find Martinez after his indictment in 2021 because he has no

10

official ties to a residence, job, or vehicle. He has no legitimate ties to Michigan, so he could not be released here. And while he does have family and a job (albeit for only three months) in Arizona, he also appears to have ties to the Mexican drug trade—which is right across the border from Arizona. Given Martinez's drug connections, evasiveness, and strong incentives to flee now that he is facing a minimum of 15 years in prison, the Court is not convinced that any possible conditions could reasonably assure Martinez's appearance in Court.

Thus, this factor weighs heavily in favor of detention.

_History and characteristics of the defendant._ Martinez has a limited criminal history and was not on probation or parole at the time of the offense conduct, which are factors in favor of his pretrial release. However, other considerations muddy the waters. There is evidence that Martinez has repeatedly engaged in drug trafficking and has been untruthful about where he has lived and where he has worked. His employment history is limited and under the table. *Marion*, 2022 WL 4465157, at *5 (finding the defendant's "sparse" employment history concerning as it relates to the "history and characteristics" factor). And while Martinez has family connections in Arizona, the DEA's wire intercepts showed that Martinez's associates were in frequent contact with Martinez's family around the time that Martinez was detained in 2019. As such, Martinez's familial support system is not suited to keeping him away from further drug activity while out on bond.

Considering the foregoing, this factor is neutral, if not in favor of detention.

*Danger to community*. In determining the danger to the community, the Court must "look to more than whether or not the defendant himself has been guilty of physical violence, but also to the safety of the community as a whole." *United States v. Patton*, No. 20-cr-20393, 2021 WL 267778, at *5 (E.D. Mich. Jan. 27, 2021) (quotation marks and citation omitted). "This includes the serious danger posed by drug trafficking activity." *Id.* As discussed above, Martinez is a well-connected drug trafficker and appears to have the resources to commence dealing once more. As such, he poses a danger to the community. *Taylor*, 449 F. Supp. 3d at 674 (stating that in drafting the Bail Reform Act, Congress determined that "drug offenders pose a special risk of flight and dangerousness to society" and that "the risk of continued narcotics trafficking on bail constitutes a risk to the community." (citation omitted)). Moreover, Martinez has had access to firearms in furtherance of his drug trafficking operation. *See United States v. Ramsey*, No. 97-5144, 1997 WL 135443, at *1 (6th Cir. Mar. 24, 1997) (affirming detention pending trial where the defendant "has had access to firearms"); *Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination.").

As such, this factor is in favor of detention.

For the foregoing reasons, the Court concludes that the Government, aided by the presumption of detention in this case, has demonstrated that there are no

12

conditions that could be imposed here that would reasonably assure the safety of the community or Martinez's appearance in court if he is released on bond pending trial. Ultimately, placing Martinez on a tether will do little to prevent him from going back to facilitating large scale drug transactions. *See United States v. Tawfik*, No. 17-cr-20183-2, 2017 WL 1457494, at *8 (E.D. Mich. Apr. 25, 2017) ("[A] tether offers little assurance of an appearance or an intent to forego activities that pose a danger to the community."). And releasing Martinez in Arizona—closer to his drug associates in Mexico—simply increases the risk of his absconding.

### III.   CONCLUSION

Therefore, for the reasons articulated above and at the detention hearing on December 8, 2025, Martinez's bond is **HEREBY REVOKED.** Martinez shall be **DETAINED PENDING TRIAL.**

**IT IS SO ORDERED.**

Dated:  December 10, 2025                          /s/Gershwin A. Drain
                                                            GERSHWIN A. DRAIN
                                                            United States District Judge

13